UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANTONIO RAMIREZ-MIGUEL,<br><br>Petitioner(s),<br>v.<br><br>WARDEN NORTHWEST ICE PROCESSING CENTER, et al.,<br><br>Respondent(s). | CASE NO. C26-3011-KKE<br><br>ORDER GRANTING HABEAS PETITION |

Petitioner entered the United States as an unaccompanied child in 2013 and has resided in this country since then. He was arrested by United States Immigration and Customs Enforcement ("ICE") agents during a vehicle stop in November 2025, and the Government maintains that he is subject to mandatory detention. He filed a petition for a writ of habeas corpus under 28 U.SC. § 2241, arguing that subjecting him to mandatory detention without any individualized determination of its justification is unconstitutional. Dkt. No. 1. The Government[1] filed its return and Petitioner has filed a traverse, and the petition is now ripe for resolution.

For the following reasons, the Court finds that Petitioner's detention is unlawful and will grant the petition and order the release of Petitioner.

[1] In this order, the Court refers to the federal Respondents—the Secretary of U.S. Department of Homeland Security ("DHS"), the Director of ICE, and the U.S. Attorney General—as "the Government."

## I. BACKGROUND

Petitioner is a native and citizen of Guatemala who entered the United States as an unaccompanied child without inspection in December 2013. Dkt. No. 5 ¶¶ 3, 5. He was apprehended by U.S. Border Patrol, placed in removal proceedings, and released to the custody of his mother in January 2014. *Id.* ¶¶ 3–5. The Government charged Petitioner with removability under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act. Dkt. No. 6-2.

Petitioner applied for relief from removal, which led an immigration judge to administratively close Petitioner's removal proceedings in October 2014. Dkt. No. 5 ¶ 7. DHS requested that the immigration court re-calendar Petitioner's removal proceedings in July 2015, and the immigration court granted that request. *Id.* ¶ 8. In April 2016, the immigration court administratively closed Petitioner's case "on prosecutorial discretion." *Id.* ¶ 9. In October 2020, DHS again requested that the immigration court re-calendar Petitioner's removal proceedings, and the immigration court granted that request. *Id.* ¶¶ 10–11.

Petitioner failed to appear at an immigration court hearing in November 2022, and was ordered removed to Guatemala *in absentia*. Dkt. No. 5 ¶ 12. Citing that order of removal, ICE officers arrested Petitioner when he was stopped in November 2025. Dkt. No. 6-1. ICE determined that Petitioner would remain in custody. *Id.* at 4.

On January 6, 2026, Petitioner filed a motion to reopen his immigration proceedings, and the motion was granted on January 20, 2026. Dkt. No. 5 ¶¶ 14–15. The immigration court set a merits hearing for March 2026. *Id.* ¶¶ 15–16. The immigration court thereafter denied Petitioner's applications for relief and ordered him removed to Guatemala. Dkt. No. 6-3. The appeal deadline for that order was May 11, 2026. Dkt. No. 5 ¶ 17. Petitioner appealed on May 10, 2026. Dkt. No. 1-2.

On May 23, 2026, ICE removed Petitioner to Guatemala. Dkt. No. 5 ¶ 19. Petitioner's lawyer requested that the United States return Petitioner because he was wrongfully removed while his appeal was pending. *See* Dkt. No. 1-3. ICE requested parole for Petitioner, and the Government facilitated Petitioner's return to the United States on July 23, 2026. Dkt. No. 5 ¶ 22. Petitioner was transferred to the Northwest ICE Processing Center on July 28, 2026, where he remains detained. *Id.* ¶ 23. Petitioner has not requested or received a bond hearing. *Id.*

Petitioner filed a petition for a writ of habeas corpus requesting immediate release or, in the alternative, a constitutionally sufficient bond hearing. Dkt. No. 1. For the following reasons, the Court grants the habeas petition.

## II. ANALYSIS

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). In this case, Petitioner contends that his arrest and detention violate, among other things, the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). The Court will consider each *Mathews* factor in turn to determine whether Petitioner received the process appropriate to his circumstances, after determining the governing detention authority.

**A. Petitioner Is Not Subject to Mandatory Detention.**

To determine whether Petitioner's re-detention complies with due process, the Court must first determine the statutory authority governing Petitioner's re-detention. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008) ("Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention.").

Petitioner asserts his re-detention is governed by 8 U.S.C. § 1226(a) because he was released to the custody of his mother after he entered the United States, while the Government asserts he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) as an "applicant for admission." Dkt. No. 4 at 6–7, Dkt. No. 7 at 1–3.

In *Jennings v. Rodriguez*, the Supreme Court explained that "[r]ead most naturally, § 1225(b)(1) … mandate[s] detention of applicants for admission until certain proceedings have concluded." 583 U.S. at 297. Under § 1225(b)(1), "applicants for admission" "are detained for 'further consideration of the application for asylum[.]'" *Id.* (quoting 8 U.S.C. §§ 1225(b)(1)).

However, "[o]nce those proceedings end, detention under § 1225(b) must end as well." *Id.* Three years later, analyzing the relationship between the provisions of the INA, the Supreme Court observed that the INA's structure generally tracks "the sequential steps of the removal process." *Johnson v. Guzman Chavez*, 594 U.S. 523, 543 (2021). While "Sections 1221 to 1224 address the arrival" of noncitizens, "Section 1225 provides instructions for inspecting [noncitizens], expediting the removal of some, and referring others for a removal hearing … And § 1231 explains what to do if the [noncitizen] is ordered removed." *Id.* at 543–44.

Under Section 1231(a), "[w]hen [a noncitizen] has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the [noncitizen's] removal during a subsequent 90-day statutory 'removal period,' during which time the [noncitizen] normally is held in custody." *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001); *see also* 8 U.S.C. § 1231(a)(2)(A) (stating that during the 90-day removal period, the government "shall detain" the noncitizen"). Although 8 C.F.R. § 1241(e) provides that an *in absentia* removal order is final on the date it is entered by an immigration judge, the Ninth Circuit has held that an *in absentia* removal order becomes final either 180 days from the date the *in absentia* order is issued, or if a timely motion to reopen is filed and denied, then the date the Board of Immigration Appeals affirms the denial of the motion to reopen. *Cui v. Garland*, 13 F.4th 991, 996 (9th Cir. 2021).

In this case, at the time that Petitioner was re-detained in November 2025, it is undisputed that he had been ordered removed via an *in absentia* order three years earlier. *See* Dkt. No. 1 ¶ 16, Dkt. No. 4 at 7–8. Under *Cui*, that removal order was administratively final at the time of Petitioner's re-detention because more than 180 days had passed without a timely appeal. 13 F.4th at 996. But the Government's failure to detain Petitioner before the expiration of the 90-day removal period means that the mandatory detention provisions in 8 U.S.C. § 1231(a)(1)–(2) no

longer apply to him. *See Gomez v. Albarran*, No. 26-cv-01790-NW, 2026 WL 1229590, at *5 (N.D. Cal. May 5, 2026). Where a noncitizen is not removed during the removal period, that noncitizen is subject to supervision, rather than mandatory detention. *See* 8 U.S.C. § 1231(a)(3). Accordingly, the Court rejects the Government's attempt to categorize Petitioner as subject to mandatory detention, whether under Section 1225(b)(2)(a)[2] or Section 1231(a)(1)–(2).

Therefore, the Court will consider whether Petitioner's re-detention comports with due process under *Mathews*.[3]

**B. Petitioner's Re-Detention Does Not Comport With Due Process.**

All three *Mathews* factors favor Petitioner, leading the Court to join others in concluding that if the Government intends to detain a noncitizen pursuant to an *in absentia* removal order outside the removal period, the Government must provide notice and an opportunity to be heard before re-detaining him. *Castillo-Patterson v. Hernandez*, No. 2:26-cv-01373-JNW, 2026 WL 1745827, at *3–4 (W.D. Wash. June 17, 2026); *Gomez*, 2026 WL 1229590, at *6.

---

[2] Many courts, including the Ninth Circuit, have rejected the application of Section 1225(b)(2)(A) to a noncitizen such as Petitioner, who was previously released and has been living in this country since 2013. *See, e.g., Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1193 (9th Cir. 2026) (concluding that Section 1225(b)(2)(A) applies to "unadmitted aliens entering the United States at the border" and that Section 1226 governs "unadmitted aliens present in the interior of the country"); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 731–32 (6th Cir. 2026) (holding that Section 1225(b)(2) does not apply to noncitizens who have lived in the interior of the United States for years); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 175 F.4th 828, 856 (7th Cir. 2026) (finding that "the text, statutory context, legislative history, and long-standing Executive practice all confirm that Section 1225(b)(2)(A) applies to 'applicants for admission' who are seeking lawful entry at the border or ports of entry and not to noncitizens unlawfully living in the country's interior"); *Barbosa Da Cunha v. Freden*, 175 F.4th 61, 70 (2d Cir. 2026) ("[C]onsistent with the plain text of the statutory provisions at issue here, our holding allows noncitizens like Petitioner, who are already present in the United States and are determined not to be a flight risk or danger to the community, to be released on bond under Section 1226(a) while their removal proceedings are pending."); *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1155 (D. Nev. 2025) ("By subjecting noncitizens like Petitioners to mandatory detention, despite their significant due process rights as individuals present in the U.S., with no consideration of their deep financial, community, and familial ties in the country, the government has proffered an interpretation of a federal statute that engenders constitutional issues." (citation modified)).

[3] The Government notes that Petitioner has not requested a bond hearing nor has "he been denied a bond hearing due to his mandatory detention status[,]" thereby contending that Petitioner has failed to exhaust his administrative remedies. Dkt. No. 4 at 7. The Court waives any prudential exhaustion requirement given the potential for irreparable injury that may result from unlawful detention. *See Laing v. Ashcroft*, 370 F.3d 994, 998, 1000–01 (9th Cir. 2004).

First, Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Petitioner has remained in the United States continuously since 2013. Dkt. No. 1 ¶ 6. He is married to a legal permanent resident and has two minor children who are United States citizens. *Id.* That Petitioner was arrested in November 2025 and remains in custody nearly one year later undoubtedly presents a deprivation of Petitioner's interest in his liberty. The Court finds that Petitioner's interest in his liberty is constitutionally protected. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("[I]ndividuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty.").

Second, the Court finds a high risk of erroneous deprivation of Petitioner's liberty interest in the absence of adequate notice of the justification for detention. Petitioner's *in absentia* removal order was eventually reopened and, as noted above, the Government made no effort to promptly detain Petitioner after the removal order was entered. And, notably, the Government wrongly removed Petitioner to Guatemala despite the automatic stay resulting from his appeal, which only confirms this Court's concern that Petitioner faces a high risk of erroneous deprivation without adequate process.

And third, the Court finds that the Government's interest in re-detaining non-citizens previously released without process is "minimal": any administrative or financial burdens in providing Petitioner notice or a hearing are far outweighed by the risk of erroneous deprivation of the liberty interest at issue. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").

Accordingly, because all three *Mathews* factors favor Petitioner, the Court finds that Petitioner's due process rights have been violated and now considers the appropriate remedy.[4]

**C. Immediate Release Is the Appropriate Remedy.**

The Government contends that Petitioner is not entitled to either immediate release or a Court-ordered bond hearing because his detention comports with due process and has not become unreasonably prolonged. Dkt. No. 4 at 7. As explained earlier in this order, the Court finds that Petitioner's detention does *not* comport with due process, and whether it has become prolonged is irrelevant to that finding.

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "Declaratory and injunctive relief are proper habeas remedies." *Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022).

Here, the Court finds that the appropriate remedy for Petitioner's unconstitutional detention is immediate release. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody.").

---

[4] Although "APA and habeas review may coexist[,]" the Court finds it unnecessary to address Petitioner's APA claim because complete relief may be provided on his constitutional claim. *Bautista v. Santacruz*, 813 F. Supp. 3d 1084, 1108 (C.D. Cal. 2025) (quoting *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 185 (D.D.C. 2015)).

## III. CONCLUSION

For these reasons, the Court GRANTS the habeas petition. Dkt. No. 1. The Court ORDERS that Petitioner shall be released from custody no later than September 18, 2026, on reasonable terms of supervision. The Government shall file a status report no later than September 21, 2026, to confirm Petitioner's release in compliance with this order.

The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition.

Dated this 17th day of September, 2026.

Kymberly K. Evanson
United States District Judge